Rosezella COOK et al.,
Plaintiffs-Appellees,

v.

OCHSNER FOUNDATION HOSPITAL,
Defendant,

Methodist Hospital and East Jefferson
General Hospital,
Defendants-Appellants.

No. 75–3982.

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1977.

Charles E. McHale, Jr., New Orleans, La., for Methodist Hospital.

Peter E. Duffy, Metairie, La., for East Jefferson General Hospital.

Marilyn G. Rose, Center for Law & Social Policy, Washington, D. C., for defendant.

Before GOLDBERG and FAY, Circuit Judges, and DUMBAULD *, District Judge.

FAY, Circuit Judge:

This is an appeal by Methodist Hospital and East Jefferson General Hospital from an order and judgment awarding attorneys' fees to plaintiffs as part of the compensatory damages in their action for civil contempt against the hospitals.[1] Appellants-hospitals contend that attorneys' fees are not recoverable under *Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), or in the alternative, if attorneys' fees are recoverable, the case should be remanded back to the trial court for an evidentiary hearing and appropriate findings. We find that the trial judge properly awarded attorneys' fees, however, we remand for an evidentiary hearing and for the trial judge to make specific findings as set forth below.

Plaintiffs originally instituted this action against numerous hospitals seeking declaratory judgment and injunctive relief to enforce provisions of the Hill-Burton Act[2] under which the hospitals made contractual commitments. The complaint also contained civil rights causes of action which were severed from the Hill-Burton count for trial. The Hill-Burton count was set for trial, however, a consent agreement was reached by all parties on August 1, 1972[3] and this count was settled.

In July, 1973, plaintiffs moved the District Court to find the seven hospitals and the Louisiana State Department of Hospitals in contempt for failure to meet the provisions of the August 1, 1972, Consent Decree. The motion was granted with respect to the two appellants before this court, East Jefferson and Methodist, and in March, 1975, the court issued its "Findings of Fact and Conclusions of Law" holding plaintiffs were entitled to damages and costs, including attorneys' fees, compensating them for bringing appellants' contempt to the court's attention.

Appellants' first assignment of error is based on *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* and the Supreme Court's holding that " . . . a court may assess attorneys' fees for the 'willful disobedience of a court order . . . as part of the fine to be levied on the defendant.' " *Alyeska,* 421 U.S. at 258, 95 S.Ct. at 1622. They submit the trial court found neither a 'willful' act by appellants which was an exception to the "American Rule"[4] nor violation of a statute which awards attorneys' fees; therefore the fees were not properly awarded. We do not agree with application of the *Alyeska* decision to the case at bar.

*"Rosezella Cook, et al v. Ochsner Foundation Hospital and David Matthews as U.S. Secretary of Health, Education and Welfare et al"* involving the validity of two provisions of the Hill-Burton free service regulation imposed on HEW by the Federal Hospital Council.

---

* Edward Dumbauld, District Judge of the Western District of Pennsylvania, sitting by designation.

1. The original contempt application was against seven hospitals but the court found violations of the Consent Decree only by Methodist and East Jefferson.

2. Hospital Survey and Construction Act of 1946, as amended, 42 U.S.C. § 291 *et seq.*

3. The civil rights aspect of this case is still pending in the district court. There is also pending in this court a separate appeal entitled

4. The American Rule provides that a prevailing litigant in the United States is not entitled to collect attorneys' fees from the loser unless he falls within one of the three exceptions listed in *Alyeska.*

In *Alyeska,* the plaintiff had sued the United States Secretary of the Interior to prevent him from issuing permits for the rights-of-way for the Alaska Pipeline alleging that the issuance would be in violation of § 28 of the Mineral Leasing Act of 1920, as amended, 30 U.S.C. § 185, and without compliance with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* After deciding the merits, the court of appeals awarded plaintiff attorneys' fees for having performed the function of a private attorney general in enforcing the statutes. The statutes themselves did not provide for an award of attorneys' fees. The Supreme Court reversed, reasoning that Congress had specified that attorneys' fees should be allowed with respect to enforcement of some statutes (e. g., Clayton Act, § 4, 38 Stat. 731, 15 U.S.C. § 15; Truth in Lending Act, 82 Stat. 157, 15 U.S.C. § 1640(a)) but had not spoken regarding others and that the courts should not be permitted, absent Congressional directive, to substitute its opinion for that of Congress and award attorneys' fees under statutes in which Congress had not so provided. Under the "private attorney general" rationale the courts would be able to pick and choose to enforce statutes considered important by awarding attorneys' fees and allow the other statutes to remain unenforced due to the expense to possible plaintiffs.

The *Alyeska* decision is, of course, applicable to cases dealing with the Courts' practice of using fee-shifting to augment acts of Congress where Congress has not authorized that means of enhancing the force of its statutory mandate. However, in this case, we are dealing not with a matter Congress has reserved for itself, that is, not with the provisions of a federal statute but with the courts' enforcement of its own order.

 Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees. The theory for allowing attorneys' fees for civil contempt is that civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. *United States v. United Mine Workers,* 330 U.S. 258, 303–304, 57 S.Ct. 677, 91 L.Ed. 884 (1947).

In ordering the award of attorneys' fees for compensatory purposes in this case, the court is merely seeking to insure that its original order is followed. Otherwise, the benefits afforded by that order might be diminished by the attorneys' fees necessarily expended in bringing an action to enforce that order violated by the disobedient parties. That *Alyeska* lists among the judicially created exceptions to the "American Rule" the "willful disobedience of a court order" does not abrogate the existence of the inherent authority of a court to enforce its orders by whatever means, without abusing its discretion. It matters not whether the disobedience is willful, the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order. Because damages assessed in civil contempt cases are oftentimes compensatory (instead of coercive) the mental state of the violator should not determine the level of compensation due.

In *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822 (5th Cir. 1976), a Drug Enforcement Administration agent had seized controlled substances from the drug company and upon being ordered refused, on the advice of the United States Attorney, to return the substances. The court held him in contempt declining to find the DEA agent intended to violate the original order but ordering him to pay $500 to the drug company. Although the case did not expressly involve attorneys' fees the court's language was quite broad in stating that

"[c]ompensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance. This includes losses flowing from noncompliance and expenses reasonably and necessarily in-

curred in the attempt to enforce compliance. *Norman Bridge Drug Co. v. Banner,* 529 F.2d at 827.[5]

■ We, therefore, hold that *Alyeska* was not intended to take away the inherent authority of a court to award attorneys' fees in a civil contempt proceeding.[6]

■ Because we are upholding the propriety of the attorneys' fees award, the only question now remaining is whether the district court erred in not holding an evidentiary hearing on the amount of awarding attorneys' fees under *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). We find that the trial court did err and remand for a hearing. The affidavits filed created conflicts which must be resolved and, in the absence of a stipulation that the trial court will rule based upon the affidavits, such a conflict requires a due process hearing. We also order the trial judge to make specific findings and conclusions and set forth the basis of his rulings. The elements for awarding attorneys' fees have been set out by this circuit in *Johnson, supra,* and subsequent cases [7] and the trial judge's findings should cover these same elements.

Remand with instructions.

---

**5.** The court's failure to cite *Alyeska* in *Norman Bridge* is obviously due to the fact that the appeal was based on the propriety of the contempt finding and not that attorneys' fees might have been included as part of the award.

**6.** The Civil Rights Attorneys' Fees Act of 1976, P.L. 94–559, amending, 42 U.S.C. § 1988, might allow attorneys' fees as suggested by appellants in cases where a civil rights action was involved but in this case this award is not so controlled because the terms of the Consent

Decree clearly only deal with the Hill-Burton cause of action.

**7.** E. g., *Wolf v. Frank,* 555 F.2d 1213 (5th Cir. 1977); *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977); *Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977).