Sheila P. LINK, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 93–CV–580.

District of Columbia Court of Appeals.

Argued Nov. 4, 1994.

Decided Dec. 1, 1994.

Paula D. Scott, Washington, DC, for appellant.

James C. McKay, Jr., Asst. Corp. Counsel, with whom Vanessa Ruiz, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel,

Washington, DC, were on the brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and NEWMAN, Senior Judge.

SCHWELB, Associate Judge: ·

This appeal presents two questions regarding the remedial authority of a trial judge who has held a litigant in civil contempt of court. We must first decide whether the judge may require the contemnor to pay the aggrieved party's counsel fees in the absence of a finding that the contemptuous conduct was willful. If the judge has the authority to make an award of counsel fees under such circumstances, then we must also decide whether he may limit the award to a token sum because the fees would be paid from the public fisc and because the aggrieved party was represented without charge by a non-profit legal services organization. We answer the first question in the affirmative and the second in the negative.

## I.

On August 15, 1991, the District of Columbia, as landlord, filed an action for possession against Sheila P. Link, a public housing tenant, alleging nonpayment of rent. Ms. Link, represented by attorneys from the Neighborhood Legal Services Program, filed an answer and counterclaim in which she alleged the existence of substantial Housing Code violations. Negotiations ensued and, on April 20, 1992, the parties executed a settlement agreement which required the District, among other things, to make specified repairs in Ms. Link's apartment and to issue a check in Ms. Link's favor in the amount of $800, that sum representing one-third of the rent which Ms. Link had paid over the past three years. The repairs were to be completed in thirty days, except that the time limit was extended to ninety days for certain structural repairs. The check was to be issued within a reasonable time.

The District failed to carry out its obligations under the settlement agreement and, on October 19, 1992, the court, on Ms. Link's motion, issued an order directing the District to comply with all of the terms of the agreement by November 15, 1992. The District did not comply with the court's order and, on March 25, 1993, following an evidentiary hearing, the trial judge held the District in civil contempt.[1] Five days later, the judge issued a written order in which he required the District to make the remaining repairs by a specified date, directed the District to pay an additional $115 in filing fees and interest, and awarded Ms. Link $100 in counsel fees. On April 22, 1993, Ms. Link filed a timely appeal. She now contends, as she did in the trial court, that the award of counsel fees was inadequate.

## II.

■ The District did not cross-appeal from the trial court's order. Its position on Ms. Link's appeal, however, is that the trial judge was without authority, under *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and its progeny, to award any counsel fees at all. This is so, according to the District, because the judge expressly found that the District's failure to comply with the court's order was not willful. The District contends, in other words, that the award was not inadequate because the only legally permissible award was zero.[2] We disagree with the District's position.

Link contends that the point has been waived. As the Supreme Court explained in *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1157 n. 6, 25 L.Ed.2d 491 (1970), however, "[t]he prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Accord, Sheetz v. District of Columbia*, 629 A.2d 515, 519 n. 5 (D.C.1993). We think this principle applies here even though the logic of the District's position on appeal is that Ms. Link

---

1. At the hearing on the civil contempt motion, the District finally provided Ms. Link with a check for $800. The repairs, however, still had not been completed. Eleven months after agreeing to replace Ms. Link's non-functioning stove, for example, the District had not done so. The front door had not been repaired until a few days before the hearing, and the judge inferred that this had been accomplished because the contempt proceedings were pending.

2. The District did not argue below that the court lacked authority to award counsel fees, and Ms.

■ "Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) (citations omitted); *D.D. v. M.T.*, 550 A.2d 37, 43 (D.C.1988) (citing *McComb*). "[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party...." *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir.1977). "[A] party compelled to resort to a civil contempt proceeding to preserve and enforce an adjudicated right is entitled to a decree by way of a fine for injuries actually sustained by [her] because of the contemptuous act ... which [decree] may include, in the discretion of the court, an award of reasonable attorney's fees." *In re Federal Facilities Realty Trust,* 227 F.2d 657, 658 (7th Cir.1955). Accordingly, "[t]he 'American Rule' notwithstanding, the contemnor is ordinarily required to pay the aggrieved party's counsel fees, even in the absence of a finding of willfulness." *D.D. v. M.T., supra,* 550 A.2d at 44 (citations omitted).[3]

■ Civil contempt need not be willful to justify a discretionary award of fees and expenses as a remedial measure. *Perry v. O'Donnell,* 759 F.2d 702, 705 (9th Cir.1985). "[I]n a case involving civil contempt, there need be no finding of willful contempt for a [c]ourt to award [a]ttorneys' fees and costs to the prevailing party.... [T]he Fifth, Sixth, Seventh and Ninth Circuits have all allowed fee awards in civil contempt proceedings in which the contempt was not found to be willful." *Motley v. Yeldell,* 664 F.Supp. 557, 558 (D.D.C.1987) (Robinson, C.J.) (citations and footnote omitted).[4]

■ The District's reliance on *Alyeska,* and on our decisions which follow *Alyeska, see, e.g., In re Antioch University,* 482 A.2d 133, 136 (D.C.1984), is misplaced. In *Alyeska,* the Supreme Court reiterated the "American Rule," which provides that litigants are ordinarily required to pay their own counsel fees, and discussed the recognized exceptions to that Rule:

[A] court may assess attorneys' fees for the willful disobedience of a court order ... as part of a fine to be levied on the defendant ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons....

421 U.S. at 258–59, 95 S.Ct. at 1622 (citations and internal quotation marks omitted).[5] The Court explained that Congress has not "ex-

should have received no counsel fee award at all, so that the District is necessarily criticizing, rather than defending, the award of $100. In any event, the District has not relied on appeal on any evidence not presented to the trial court. Ms. Link has had an appropriate opportunity to respond to the District's legal arguments and, as in *Sheetz,* our readiness to consider the issue does not subject Ms. Link to any procedural unfairness. *Id.*

3. The District claims that the quoted language from *D.D. v. M.T.* is *dictum.* The contemnor in that case contended, *inter alia,* that she had acted in good faith and that the contempt order was unreasonable. In rejecting her contention, we compared the sanctions actually imposed with those that the judge had authority to impose. We noted that the judge had made no award of counsel fees, and held that the judge's contempt order was "temperate." 550 A.2d at 44–45. The discussion of counsel fees was therefore, at least, germane to the issues before the court. But even assuming, without deciding, that the District's characterization of the quoted passage as *dictum* is accurate, and that *D.D. v. M.T.* is not binding authority on the point now at

issue, *cf. M.A.P. v. Ryan,* 285 A.2d 310 (D.C. 1971), we continue to agree with the reasoning in that opinion and with the decisions on which we relied in *D.D. v. M.T.* Accordingly, we now squarely hold that the judge has the authority in a civil contempt proceeding to make an award of counsel fees in order to compensate the aggrieved party for an expense caused by the contemnor's noncompliance.

4. The only civil contempt case cited by the District in which the court held that counsel fees may be awarded only for willful disobedience is *Omega World Travel, Inc. v. Omega Travel, Inc.,* 710 F.Supp. 169, 172–73 (E.D.Va.1989), *aff'd,* 905 F.2d 1530 (4th Cir.1990). In *Omega,* the court explicitly declined to follow *Motley* and the decisions of several courts of appeals on which the judge in *Motley* relied. We agree with those courts, a substantial majority, which have not required a showing of willfulness, and we therefore respectfully decline to follow *Omega.*

5. The Court also noted the existence of a "common fund" exception, *id.* at 257, 95 S.Ct. at 1621, which is not here pertinent and which we have no occasion to explicate in this opinion.

tended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Id.* at 260, 95 S.Ct. at 1623.

As former Chief Judge Robinson has correctly observed, however, "*Alyeska* was not a contempt case, so there was no need in that action for the Court to discuss whether a finding of willfulness is a prerequisite to the award of attorneys' fees in a civil contempt proceeding." *Motley, supra,* 664 F.Supp. at 558; *accord, Perry, supra,* 759 F.2d at 705. The Supreme Court has itself prudently issued the following warning:

> It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances .of cases not before the Court. General expressions transposed to other facts are often misleading.

*Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944); *see also Tenants of 1255 New Hampshire Avenue, N.W. v. District of Columbia Rental Hous. Comm'n,* 647 A.2d 70, 77 & n. 8 (D.C.1994). The Supreme Court's allusion in *Alyeska* to "willful" disobedience of a court order cannot reasonably be construed to resolve a question not before the Court, namely whether the remedial authority of a court of equity following a violation of that court's decree extends to the award of counsel fees occasioned by the contemnor's noncompliance.

If *Alyeska* is read "in light of the facts of the case [there] under discussion," *Armour & Co., supra,* 323 U.S. at 133, 65 S.Ct. at 168, then its application or lack thereof to this appeal becomes readily apparent. In *Alyeska,* the plaintiffs requested counsel fees in connection with their attempts, in the trial and appellate courts, to obtain the relief sought in their initial complaint. Rejecting the unrestricted "private Attorney General" theory urged upon it by the plaintiffs, the Supreme Court held that, in this context, each party was responsible for its own counsel fees. This holding instructs us by analo-

gy that, although Ms. Link was successful in obtaining injunctive relief against the District—here, the order of October 19, 1992 enforcing the settlement agreement—the District is not responsible for paying Ms. Link's counsel fees in connection with the securing of that order. Ms. Link does not dispute that proposition, and she has not requested an award for any work done by her attorneys prior to October 19, 1992.

■ Ms. Link does, however, claim to be entitled to an award of counsel fees in connection with the litigation that followed the entry of the order enforcing the settlement agreement. She contends, and we agree, that the obligation to obey the court's decree—a factor which was not present in *Alyeska*—places the issue of counsel fees in an entirely different light. We explained in *D.D. v. M.T.* that

> [c]ourts have a right to demand, and do insist upon, full and unstinting compliance with their commands. One who is subject to a court order ... [must] take all necessary steps to render it effective.... Indeed, he or she must be diligent and energetic in carrying out the orders of the court ... and a token effort to comply will not do.

550 A.2d at 44 (citations omitted). Where, as here, a litigant has failed to carry out its obligations under a court order, the trial court enjoys broad discretionary powers to fashion remedial relief. *District of Columbia v. Jerry M.,* 571 A.2d 178, 191 (D.C.1990) (*Jerry M. I*). That discretion includes the authority to award counsel fees. *D.D. v. M.T.,* 550 A.2d at 44.

If the District had complied with the trial court's order, no civil contempt proceedings would have been necessary. Ms. Link's attorneys would not have been obliged to expend time and effort securing for their client her court-ordered rights. This case therefore implicates the trial court's "inherent authority to enforce its orders by whatever means." *Motley, supra,* 664 F.Supp. at 559 (quoting *Cook, supra,* 559 F.2d at 272). *Alyeska* presented no such issue, and could

not and did not decide it.[6] Accordingly, we reaffirm our position in *D.D. v. M.T.* and hold that the judge had the authority to award counsel fees notwithstanding his finding that the District's contemptuous conduct was not willful.

### III.

■ The trial judge limited his award of counsel fees to Ms. Link to the "token" amount of $100. At the contempt hearing, he orally explained his reasons for doing so:

> THE COURT: ... I'm always uncomfortable in [im]posing attorney's fees against the District in some ways, because it's not coming out of anybody's pocket and it's not—you know—it doesn't hurt them [7] the way it does with private parties, and you have the added fact that when attorney's fees go to you, where do they go? She hasn't expended a dime in attorney's fees so it's not like she is—normally when you award attorney's fees, you're not doing it to make the attorney rich, you're doing it to absolve the client from having to pay the fees. Since she didn't pay any [fees] I just don't see the—I'm not saying that Legal Services should never get attorney's fees, I'm saying it's against the city and, you know, no one has done anything willful here. It's just been the standard neglect.
>
> \* \* \* \* \* \*
>
> I'm not talking about the legal requirements, I no doubt ... could sit there and make them give you money. I'm talking about [that] it doesn't sound appropriate to

me as a practical matter. If the money goes to you, where does it go?

\* \* \* \* \* \*

> Well let me say, Ms. Newton,[8] let's say this were a private landlord, I would fund your program. I have some trouble taking it—I don't know where this money comes from, but whatever it is, it's from a pile of money that's too small to begin with. I will, as a token gesture require the payment of $100 attorney's fees because this [contempt proceeding] should never have [had] to [be] file[d]—to have gone this far along....

Ms. Link contends that the trial judge failed to apply proper factors in restricting the counsel fee award. Given our precedents, we are constrained to agree.

■ The trial court, as we have noted, has wide discretion in fashioning compensatory relief in civil contempt proceedings. *Jerry M. I, supra,* 571 A.2d at 191.[9] Indeed, the question whether to award counsel fees at all following an adjudication of civil contempt has been held to be a discretionary one. *Federal Facilities Realty Trust, supra,* 227 F.2d at 658. We indicated in *D.D. v. M.T.,* however, that the contemnor will "ordinarily" be required to pay counsel fees. 550 A.2d at 44. The granting of such relief, in our view, is therefore the norm, for if the contemnor had obeyed the order of the court, the aggrieved party would not have required further assistance of counsel.

■ The trial judge predicated the limitation of his counsel fee award, in part, on his finding that the District's conduct was not willful. There is some authority for the

---

**6.** We note that courts commonly award counsel fees in civil contempt proceedings to litigants who would not be entitled to recover them for efforts expended in securing the court's initial order. *See, e.g., Northside Realty Associates, Inc. v. United States,* 605 F.2d 1348, 1356 n. 23 (5th Cir.1979), in which the court held that "[r]egardless of whether an award of attorneys' fees to the Government would be appropriate in an original [Fair Housing Act] proceeding, such an award may be made, in the [t]rial [c]ourt's discretion, in a civil contempt action." (Citations omitted).

**7.** We note that awards of counsel fees in civil contempt cases are designed to make the injured party whole, and not to punish the contemnor.

Punishment is imposed by resort to the criminal contempt power. *D.D. v. M.T., supra,* 550 A.2d at 44.

**8.** Ms. Newton was Ms. Link's attorney at the hearing.

**9.** The amount of the counsel fees to be awarded in any litigation is likewise committed to the court's sound discretion. *District of Columbia v. Jerry M.,* 580 A.2d 1270, 1280 (D.C.1990) (*Jerry M. II*); *see also Bagley v. Foundation for the Preservation of Historic Georgetown,* 647 A.2d 1110, 1115 (D.C.1994).

proposition that willfulness or the lack thereof is relevant. *See, e.g., Federal Facilities Realty Trust, supra,* 227 F.2d at 658. Because civil contempt proceedings are remedial, however, and because they are designed to vindicate a previously adjudicated right, we do not believe that the contemnor's state of mind should be decisive. Where the contemnor's noncompliance has compelled the aggrieved party to return to court in order to enjoy the fruits of her prior victory, "[g]ood intentions cannot sterilize conduct otherwise contemptuous." *Commodity Futures Trading Comm'n v. Premex, Inc.,* 655 F.2d 779, 784 (7th Cir.1981).

 The trial judge also stated that he was awarding only a token counsel fee because the contemnor was the District rather than a private landlord, and because Ms. Link was represented by the Neighborhood Legal Services Program at no cost to herself. We explicitly held in *Henderson v. District of Columbia,* 493 A.2d 982 (D.C.1985), however, that

> [t]he identity of the party against whom the fees will be charged, *i.e.,* individual vs. governmental defendants, or whether representation was provided by private or nonprofit counsel, is irrelevant.

*Id.* at 1000 (citing *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *see also Martin v. Tate,* 492 A.2d 270, 274 (D.C.1985); *Frazier v. Franklin Investment Co.,* 468 A.2d 1338, 1340 n. 1 (D.C.1983). In *Blum,* the Supreme Court made the same point just as emphatically:

> In determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel ... are employed by ... a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when its counsel

perform legal services otherwise entitling them to the award of attorneys' fees.

*Id.,* 465 U.S. at 895, 104 S.Ct. at 1547 (quoting *Davis v. County of Los Angeles,* 8 EPD ¶ 9444, at 5048–49 (C.D.Cal.1974)).[10] "When free legal services are provided there may be no direct barrier to the courtroom door, but if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere...." *Hairston v. R & R Apartments,* 510 F.2d 1090, 1092 (7th Cir.1975). As between a nonprofit organization representing non-affluent litigants and a contemnor who has violated the court's mandate and deprived the plaintiff of a previously adjudicated right, it would be unreasonable to require the former to carry that burden.

Although, as we have noted, the trial judge has considerable latitude with respect to the award of counsel fees, in civil contempt cases as in others, the exercise of discretion must be founded on correct legal principles. *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991); *see generally Johnson v. United States,* 398 A.2d 354 (D.C.1979). In this case, the judge based his decision, in substantial part, on factors which this court and the Supreme Court have held to be legally irrelevant. Accordingly, we vacate so much of the trial court's order as limits the award of counsel fees to $100 and remand the case for further proceedings consistent with this opinion.

*So ordered.*[11]

---

10. *Blum* and *Davis* were also suits against governmental defendants.

11. Ms. Link asks us to direct the trial court to utilize the "lodestar" approach—"the number of hours reasonably expended multiplied by a reasonable hourly rate," *Motley, supra,* 664 F.Supp. at 559—to determine the appropriate fee. Chief Judge Robinson applied the lodestar in fixing the

fee for the Neighborhood Legal Service Program attorney in *Motley,* and this would doubtless be a reasonable approach in this case too. We are not prepared to hold, however, in advance of the exercise of the trial judge's discretion on remand, that no other resolution of the issue would be equitable. *See King v. King,* 579 A.2d 659, 664 (D.C.1990).